UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHARLES WOMAC, *et al.*,           )
                                   )
        Plaintiffs,                )
                                   )   Civil Case No. 1:10-CV-00052
    v.                             )
                                   )   Chief Judge Curtis L. Collier
FIRST VOLUNTEER BANK,              )
                                   )
        Defendant.                 )

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment and accompanying memorandum filed by Defendant First Volunteer Bank ("Defendant") (Court File Nos. 27, 28). Because Plaintiffs Charles Womac, Enola G. Womac, and Marian S. Womac (collectively "Plaintiffs") did not respond to Defendant's motion for 118 days–missing the deadline by ninety-seven days–and failed to timely seek[1] or receive additional time, the Court does not consider the Plaintiffs' responses (Court File

---

[1] Plaintiffs' untimely motion seeking denial or postponement of Defendant's motion for summary judgment will be denied (Court File No. 30). Plaintiffs argue Defendant's motion "was filed early and before a realistic opportunity for discovery" (*id.* at p. 1). In addition to missing the twenty-one day filing deadline, Plaintiffs' claim fails for numerous reasons. First, the scheduling order invited filing of dispositive motions "as early as possible" and no later than April 29, 2011 (Court File No. 18). Accordingly, there is no merit to the claim Defendant filed its motion too early. Second, almost six months had passed for discovery at the time of Defendant's motion for summary judgment, and only twenty-three days remained before the discovery period closed on January 28, 2011 (*see id.* at p. 2). Thus, at the time of Defendant's motion, both parties had had a sufficiently "realistic opportunity" for discovery. Third, Plaintiffs' motion fails to satisfy Fed. R. Civ. P. 56(f)'s requirement that "a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989)). Plaintiffs do not indicate any facts–material or otherwise–it hopes to uncover. Finally, to the extent Plaintiffs' motion seeks primarily to extend the discovery period, it must be denied in light of Plaintiffs' failure to conduct any discovery up to this point in the litigation. In determining whether additional discovery is warranted, the "overarching inquiry

Nos. 34, 35). For the reasons discussed below, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 27).

I.      **RELEVANT FACTS**

Plaintiffs own real property, including a farm and residence, in McMinn County, Tennessee.[2] In various loan agreements, Plaintiffs pledged this real property as collateral first to Benton Banking Company, which was subsequently acquired by Defendant First Volunteer Bank, and then directly to Defendant. Since late 2008, Plaintiffs have been in default on loans to Defendant, which in turn has made several attempts to commence foreclosure proceedings. Plaintiffs' various legal actions have frustrated Defendant's attempts to foreclose on the property.

When Defendant first attempted to foreclose in late 2008, Plaintiffs filed for bankruptcy in March 2009, which automatically stayed the foreclosure process. Plaintiffs failed, however, to make the required filings and in July 2009 the bankruptcy proceeding was involuntary dismissed. When Defendant again initiated foreclosure proceedings in August 2009, Plaintiffs sought an

---

. . . is whether the moving party was diligent in pursuing discovery." *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). Neither the record nor the affidavit submitted by Plaintiffs' counsel in support of Plaintiffs' motion shows any diligence by Plaintiffs. Indeed, Plaintiffs do not controvert Defendant's claim Plaintiffs have not conducted any discovery at all (*see* Court File No. 31, p. 1). Accordingly, denial of Plaintiffs' untimely motion seeking denial or postponement of Defendant's motion for summary judgment (Court File No. 30) is appropriate.

[2] Unless otherwise indicated, these facts are based on evidence presented to the Court in conjunction with Plaintiffs' previously denied motion for a preliminary injunction (Court File No. 16) and previously denied motion for a stay and a temporary injunction pending interlocutory appeal (Court File No. 23). As noted above, the Court does not consider affidavits or other exhibits attached to Plaintiffs' untimely responses to Defendant's summary judgment motion (Court File Nos. 30, 34, 35).

injunction in Chancery Court in McMinn County. The Chancery Court granted the injunction, but required Plaintiffs to make $5,000 monthly payments towards their debt until trial. Instead of making those monthly payments, Plaintiffs filed a voluntary non-suit and commenced this action in federal court in March 2010.

Plaintiffs assert claims under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, the Tennessee Consumer Protection Act, Tenn Code Ann. §§ 47-18-101 *et seq.*, as well as common law claims of civil conspiracy, fraud and intentional misrepresentation, negligent misrepresentation, fraudulent concealment, conversion, breach of fiduciary duty, and breach of contract.

As in their Chancery Court action, Plaintiffs moved in this case for a temporary restraining order enjoining Defendant from foreclosing on the property (Court File Nos. 1, 2). After considering evidence offered by the parties in their motions as well as arguments made during two hearings in March and April 2010, the Court denied the Plaintiffs' motion, concluding Plaintiffs had failed to demonstrate a likelihood of success on the merits or demonstrate irreparable harm (Court File No. 16). Plaintiffs then commenced both an interlocutory appeal from the Court's denial of injunctive relief (Court File No. 21) and moved for a stay and injunction pending resolution of their appeal (Court File. No. 19). Because Plaintiffs again failed to show a likelihood of success on the merits or demonstrate irreparable harm, the Court denied the Plaintiffs' motion for injunctive relief and/or a stay pending appeal (Court File No. 23). Subsequently, the Sixth Circuit also denied Plaintiffs' motion for a stay pending disposition of the appeal (Court File No. 40).

On January 5, 2011, Defendant made the present motion for summary judgment (Court File No. 27). Plaintiffs's untimely responses were not filed until May 3, 2011 (Court File Nos. 34, 35),

3

and are thus not considered by the Court in deciding Defendant's summary judgment motion.

At the final pretrial conference on August 2, 2011, the parties informed the Court Plaintiffs had filed a second bankruptcy petition on June 13, 2011–four days before the scheduled foreclosure sale. On August 6, 2011, the Court temporarily closed the case pending the disposition of the bankruptcy petition (Court File No. 43). On September 23, 2011, the Bankruptcy Court dismissed Plaintiffs' bankruptcy petition, and on October 13, 2011, the Bankruptcy Court denied Plaintiffs' motion for a stay pending appeal. The foreclosure sale then went ahead on October 17, 2011, and Defendant purchased the property at the foreclosure sale. On November 16, 2011 Plaintiffs filed a second motion for a preliminary injunction seeking various avenues of relief, including vacation of the foreclosure sale (Court File No. 47). Approximately a month later, Plaintiffs sought to amend their second motion for a preliminary injunction to ask the Court to intervene in a state court proceeding related to the foreclosure (Court File No. 58). Because the state court proceeding was to occur on December 20, 2011, the Court conducted a hearing on December 19, 2011, at which it denied Plaintiffs' motion to amend their second motion for preliminary injunction because the Anti-Injunction Act, 22 U.S.C. § 2283, and the United States Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), barred such intervention. Because the Court now grants summary judgment on all claims for Defendant, it does not consider–and therefore denies as moot–Plaintiffs' second motion for a preliminary injunction.[3]

## II. STANDARD OF REVIEW

---

[3] The Court also denies as moot Defendant's motion to quash notice of deposition and subpoena *duces tecum* (Court File No. 63).

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

In this action for damages and equitable relief, Plaintiffs offer a number of theories but little in the way of specific facts. In resolving Plaintiffs' first motion for a stay, the Court observed "Plaintiffs [had] offered very little evidence beyond unsupported assertions contending Defendant had erroneously calculated the balance outstanding on their loans" (Court File No. 23, p. 3), and further noted "Plaintiffs offer no argument as to how this dispute over the loan amount satisfies any of the elements for their claims under the Truth in Lending Act, the Real Estate Procedures Act, the Tennessee Consumer Protection Act, or their common law claims" (*id.* at p. 4). Because of their failure to submit timely responses to Defendant's motion for summary judgment, Plaintiffs have not provided *any* additional evidence or arguments since the Court's denial of Plaintiffs' motion for a stay.

### A. Truth in Lending Act and Real Estate Settlement Procedures Act

Congress passed the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, to "assure a meaningful disclosure of credit terms" in order to "avoid the uninformed use of credit" and to "protect the consumer against inaccurate and unfair credit billing and credit practices," § 1601(a). Congress further empowered the Board of Governors of the Federal Reserve System ("Board") to issue regulations to achieve TILA's purposes, § 1604(a), and acting under this authority, the Board issued Regulation Z, *Chase Bank USA v. McCoy*, 131 S.Ct. 871, 874 (2011). Regulation Z applies where credit is regularly offered to consumers, payable by a written agreement in more than four

6

installments, and is "primarily for personal, family, or household purposes." 12 C.F.R. § 226.1(c).[4] Finally, Regulation Z sets general and detailed disclosure requirements. *See* 12 C.F.R. § 226.17–20.

Plaintiffs argue Defendant violated TILA and Regulation Z by failing to provide the requisite disclosures, or by providing contradictory and confusing information, or alternatively by failing to provide disclosures to a "regulated lending institution" (Court File No. 1, ¶ 51). Defendant responds that TILA and Regulation Z do not apply because Plaintiffs' loans were used for business, commercial, or agriculture purposes, and therefore the extension of credit was exempted (Court File No. 27, pp. 14-15). Although the Plaintiffs failed to timely respond to this argument, Plaintiffs' complaint does suggest the real property at issue in this case is used for both commercial and residential purposes (Court File No. 1, ¶ 6).

Although Defendant's argument that TILA and Regulation Z do not apply may ultimately be correct, the Court, viewing the evidence in the light most favorable to non-moving Plaintiffs, will assume, without deciding, that TILA and Regulation Z apply. Plaintiffs nonetheless fail to offer specific facts that demonstrate Defendant did not provide the disclosures required under TILA and Regulation Z. Instead, Plaintiffs rely on allegations that such disclosures were not forthcoming, and "mere allegations" do not entitle the Plaintiffs to trial. *Smith*, 2009 WL 3762961, at *2-3. Moreover, Defendant, in an affidavit of its First Vice President Thomas J. Waters, indicates Plaintiffs "received every disclosure to which they were entitled and that [Defendant] was required to give, prior to the making of each note and afterwards" (Court File No. 29, ¶ 5). Plaintiffs did not timely contradict this evidence.

---

[4] Accordingly, credit extended "primarily for a business, commercial or agricultural purpose" is exempt under both TILA, § 1603(1), and Regulation Z, 12 C.F.R. § 226.3(a)(1).

7

The analysis for the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, follows a similar trajectory. Like TILA, RESPA aims, *inter alia*, to ensure more transparent transactions by requiring "more effective advance disclosure." § 2601(b)(1). RESPA applies broadly to any "federally related mortgage loan," which includes any loan which "is secured by a first or subordinate lien on residential real property" and is "made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government," § 2602(1). RESPA excludes, however, "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." § 2606(a). Regulation X, which implements the provisions of RESPA, describes disclosure requirements in more detail, including a good faith estimate the creditor must provide to the prospective debtor. 24 C.F.R. § 3500.7. Plaintiffs allege Defendant violated RESPA by failing to provide a proper good faith estimate; Defendant responds that RESPA does not apply because Plaintiffs' loans were primarily used for business, commercial, or agricultural purposes.

Although the evidence in the record tends to support Defendant's argument that RESPA does not apply, the Court again assumes, without deciding, RESPA's applicability. Plaintiffs offer no evidence–not even an affidavit–in support of their claim in the pleadings that they did not receive a proper good faith estimate pursuant to Regulation X. Again pertinent is Defendant's uncontroverted affidavit that Plaintiffs received all relevant disclosures (Court File No. 29). Accordingly, under RESPA, as under TILA, Plaintiffs have failed to demonstrate a genuine issue for trial, and summary judgment for Defendant is appropriate as to Plaintiffs' claim under each federal statute.

**B.     State Law Claims**

### 1. Supplemental Jurisdiction

As a threshold matter, the Court, having dismissed Plaintiffs' federal law claims, must determine whether it is appropriate to retain supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (district court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues.").

Although dismissing state law claims when federal law claims have been dismissed is often proper, *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996), "[t]here are, however, circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed," *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010). In particular, a court may "consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case." *Carnegie-Mellon*, 484 U.S. at 357. The Sixth Circuit has identified several factors favoring retention of supplemental jurisdiction: "(1) the plaintiff ha[s] engaged in forum manipulation by deciding to dismiss his

9

federal-law claims only after the case had been on the district court's docket for 11 months, (2) the parties ha[ve] completed discovery, and (3) the defendants' summary-judgment motions [are] ripe for decision." *Gamel*, 625 F.3d at 952 (discussing *Harper v. AutoAlliance Intern, Inc.*, 392 F.3d 195, 211-212 (6th Cir. 2004)). The Sixth Circuit in *Harper* also noted "the district court was familiar with the facts of the case and already had invested significant time in the litigation." *Harper*, 392 F.3d at 211.

Mindful of federalism and comity concerns, the Court finds the balance of considerations here points in favor of retaining supplemental jurisdiction over Plaintiffs' state law claims. First, Plaintiffs' use of various forums, including bankruptcy proceedings, state court, and this Court, as a means to avoid foreclosure by Defendant strongly suggests manipulative tactics. Second, this case has been on the Court's docket for more than eighteen months, and as in *Harper*, the Court has invested significant time considering motions and conducting hearings. Third, the parties have completed discovery. Finally, Defendant's motion for summary judgment is ripe for decision. In light of these factors, judicial economy favors retaining supplemental jurisdiction to decide Plaintiffs' state law claims.

### 2. Civil Conspiracy

Under Tennessee law, a civil conspiracy requires "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). In *Trau-Med*, the Tennessee Supreme Court adopted the "intracorporate conspiracy immunity doctrine," holding "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged

10

is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents." *Id.* at 703-04. Thus, to succeed on a civil conspiracy claim, Plaintiffs must allege more than that employees of Defendant First Volunteer Bank conspired with each other.

Here, Plaintiffs' civil conspiracy claim fails because they allege only that employees and officers of Defendant "acted in concert to deprive Plaintiffs of their property and to destroy their reputation" (Court File No. 1, ¶ 30). Plaintiffs neither allege nor offer evidence of Defendant conspiring with any other entity. Plaintiffs' claim is therefore foreclosed by the intracorporate conspiracy immunity doctrine.

### 3. Tennessee Consumer Protection Act

Plaintiffs allege a violation of the Tennessee Consumer Protection Act ("TCPA"). Tenn. Code Ann. §§ 47-18-101 *et seq*. To make out a claim under the TCPA, a plaintiff must establish: (1) an ascertainable loss of money or property; (2) that such loss resulted from an unfair or deceptive act or practice; and (3) that the act or practice is declared unlawful under the TCPA. Tenn. Code Ann. § 47-18-109. Although the TCPA imposes no single standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as "a material representation, practice, or omission likely to mislead . . . reasonable consumers to their detriment." *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997) (quoting *Bisson v. Ward*, 628 A.2d 1256, 1261 (Vt. 1993))). Claims under the TCPA must be brought within one year from a person's discovery of the unlawful act or practice. Tenn. Code Ann. § 47-18-110.

Plaintiffs make general allegations that Defendant engaged in unfair and deceptive trade practices in violation of the TCPA by failing to disclose information connected to the loan, and by

11

"presenting the Plaintiff with additional costs and principal amounts not contracted for" (Court File No. 1, ¶ 37). Defendant responds Plaintiffs have failed to keep records, have suffered no ascertainable loss, and failed to comply with TCPA's statute of limitations because they filed this action more than a year after the final note was made.

Plaintiffs' claims under the TCPA are indeed time-barred. The alleged violations of the TCPA center on Defendant's failure to disclose information at the time each note was made. The latest of the five notes was made on June 30, 2008 (Court File No. 20-2, p. 4). Assuming, *arguendo,* Defendant's alleged failure to disclose information constituted an "unlawful act or practice" under the TCPA, Plaintiffs would have discovered this non-disclosure at the date the notes were made. Thus, Plaintiffs were required to institute an action under the TCPA no later than June 30, 2009. In fact, Plaintiffs did not commence this action until March 12, 2010.

Even if Plaintiffs had timely filed their TCPA claims, they have offered no evidence that Defendant engaged in "a material representation, practice, or omission likely to mislead . . . reasonable consumers to their detriment." *Faye v. Vincent*, 301 S.W.3d at 177. Plaintiffs' allegation of non-disclosure unsupported by evidence in the record is not sufficient to survive summary judgment.

### 4. Fraud and Intentional Misrepresentation and Negligent Misrepresentation

Plaintiffs bring separate claims under fraud and intentional misrepresentation and under negligent misrepresentation. In order to establish a claim for fraudulent or intentional misrepresentation in Tennessee, a plaintiff must show:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its

12

truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (citation omitted). To make out a claim for negligent misrepresentation, the plaintiff must establish "that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Id.* (citation omitted).[5]

In a federal court fraud or mistake action, "a party must state with particularity the circumstances constituting a fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, "the plaintiff must, at a minimum, allege the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Power & Tel. Supply Co., Inc. v. SunTrust Bank, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).

In alleging fraud and intentional misrepresentation, Plaintiffs offer little more than general statements that Defendant acted fraudulently. Although Plaintiffs assert Defendant made statements it knew to be false, Plaintiffs provide no evidence in support of this claim. The statements and affidavits of Plaintiffs' personal book keeper, Jim Heading, demonstrate Plaintiffs dispute the amount of the debt they owe (*see, e.g.* Court File No. 20, Ex. 1); this evidence does not, however, show Defendant knowingly made a false representation of material fact. Moreover, Plaintiffs' complaint fails to "state with particularity the circumstances constituting a fraud," Fed. R. Civ. P.

---

[5] Tennessee has adopted the definition of negligent misrepresentation from the Restatement of Torts: a party is liable for negligent misrepresentation if he "supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Bennet v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 301 (Tenn. 2007) (quoting Restatement (Second) of Torts § 552 (1997)).

13

9(b), and thus does not satisfy Rule 9(b)'s particularity requirement.

Summary judgment for Defendant is also appropriate on Plaintiffs' negligent misrepresentation claim. Indeed, in alleging negligent misrepresentation, Plaintiffs repeat, verbatim, their claim for intentional misrepresentation and fraud.[6] Thus, Plaintiffs do not plead the time or place of the alleged negligent misrepresentation as required under Rule 9(b). Additionally, although Plaintiffs dispute precisely the amount they owe Defendant, Plaintiffs do not offer evidence indicating either that this dispute arises out of Defendant's failure to exercise reasonable care in communicating information to the Plaintiffs or that Defendant supplied false information. Defendant, by contrast, has provided copies of all five loans it made to Plaintiffs, as well as the payment history of those loans (Court File no. 29, Ex 1). Plaintiffs do not controvert this evidence.

### 5. Fraudulent Concealment

To establish fraudulent concealment, a plaintiff must establish:

(1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; (2) that the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence; (3) that the defendant had knowledge of the facts giving rise to the cause of action; and (4) that the defendant concealed material facts from the plaintiff by withholding information or making use of some device to mislead plaintiff, or by failing to disclose information when he or she had a duty to do so.

*Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2002). Because this cause of action alleges fraud, Rule 9(b)'s particularity requirements also apply. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 850 (6th Cir. 2006) (Rule 9(b) applies to fraudulent concealment actions).

---

[6] Plaintiffs also add one additional sentence in their claim for negligent misrepresentation alleging they "suffered economic harm and will eminently [sic] lose control of their property as a result of the Defendants' conduct" (Court File No. 1, ¶ 48).

14

After stating Defendant "had a duty to disclose all material facts of the transaction to Plaintiffs," Plaintiffs allege "Defendant intentionally concealed and/or intentionally failed to disclose all material facts of the transaction to Plaintiffs" (Court File No. 1, ¶¶ 42-43 ). Plaintiffs therefore fail to plead with particularity any of the elements for a fraudulent concealment action. Plaintiffs have not offered any specific facts contradicting Defendant's evidence that Defendant provided Plaintiffs all required disclosures. Plaintiffs similarly have not offered evidence indicating Defendant "took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so." *Pero's Steak and Spaghetti House*, 90 S.W.3d at 624. Because Plaintiffs failed to satisfy Rule 9(b)'s pleading requirement and because there is no genuine issue of material fact on at least the first and fourth elements, summary judgment for the Defendant is appropriate.

### 6. Conversion

"Conversion does not occur until the 'alleged wrongdoer exercises dominion over the funds in defiance of the owner's rights.'" *Ralston v. Hobbs*, No. M2009-02442-COA-R3-CV, 2010 WL 4272692, at * 4 (Tenn. Ct. App. Oct. 28, 2010) (citation omitted). In order for Plaintiffs to succeed on this claim, Plaintiffs must make out of a *prima facie* case establishing "(1) the appropriation of [Plaintiffs'] property to [Defendant's] own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Ferrell v. Addington Oil Corp.*, No. 2:08-CV-74, 2010 WL 3283029, at *4 (E. D. Tenn. Aug. 18, 2010).

Plaintiffs' allegation of conversion consists only of the claim "Defendant and employees and Officers took and/or converted to his/her/its use certain property of Plaintiffs" (Court File No. 1, ¶ 49). Plaintiffs do not specify what property Defendant has allegedly appropriated, and offer no

15

evidence demonstrating any such appropriation has occurred. Indeed, by Plaintiffs' own admission, they owe Defendant more than five hundred thousand dollars (Court File No. 20, Ex. 1). Plaintiffs have thus failed to make out a *prima facie* case for conversion, and summary judgment for Defendant is proper.

### 7. Breach of Fiduciary Duty

Plaintiffs allege Defendant owed them fiduciary duties, which Defendant breached. Tennessee statute provides that:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as fiduciary or have a fiduciary obligation or responsibility to its customers or to other parties, other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

Tenn. Code Ann. § 45-1-127(a). Thus, the typical relationship between debtor and creditor does not impose fiduciary duties on the creditor, *See Glazer v. First Am. Bank*, 930 S.W.2d 546, 550 (Tenn. 1996), underscoring "the recognition that bank-depositor or debtor-creditor relationships generally involve arm's-length dealings." *Power & Tel. Supply Co. v. Sun Trust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (interpreting Tennessee law).

Beyond allegations Defendant owed and violated fiduciary duties, Plaintiffs provide no additional facts. Specifically, Plaintiffs do not point to any written agency or trust agreement that would remove this case from the typical arm's-length debtor-creditor relationship, in which the creditor does not have fiduciary obligations to the debtor. Defendant, by contrast, offers an affidavit stating "[a]t no point did [Plaintiffs] indicate that they placed any special trust or confidence in [Defendant], nor did [Defendant] enter into any relationship with [Plaintiffs] other than the normal lender-borrower relationship" (Court File No. 29, ¶ 7). Plaintiffs did not timely controvert this

16

statement. Because there is no evidence of anything other than the typical debtor-creditor relationship between the parties, the Court finds Plaintiffs have failed to demonstrate a genuine issue of fact as to the existence of a fiduciary duty between the parties.

### 8. Breach of Contract

To establish a breach of contract claim under Tennessee law, a plaintiff must prove "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006). Moreover, "a party who commits the first uncured material breach of contract may not recover damages for the other party's material breach." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009).

Plaintiffs claim Defendant breached by "not giving proper notice and by not allowing Plaintiffs to cure alleged debts owed" (Court File No. 1, ¶ 62). Defendant contends language in the deeds of trust in each note provided Plaintiffs with proper notice of the foreclosure remedy under Tennessee law (Court File No. 28, pp. 18-19). Defendant further argues the evidence clearly indicates Plaintiffs have made no effort to cure the defect by repaying the various debts, and have in any case failed to allege an injury attributable to the alleged breach (*id.* at p. 19). Finally, Defendant claims Plaintiffs are barred from recovery on account of Plaintiffs' own prior breach of the contract (*id.* at pp. 19-20).

The Court finds Plaintiffs have not met their burden of establishing specific facts to demonstrate there is a genuine issue for trial on their breach of contract claim. First, Plaintiffs have not offered evidence of nonperformance by Defendant. Plaintiffs provide no supporting documentation for their general claim that Defendant failed to provide proper notice, leaving the

Court uncertain what Plaintiffs are in fact arguing. Assuming Plaintiffs' claim regarding improper notice refers to the possibility of foreclosure, this claim is rebutted by the language supplied in each of the loan agreements (Court File No. 20, Ex. 2, 4, 6, 7, 9), which spells out the foreclosure process. Second, to the extent Plaintiffs' claim they were not given time to cure by repaying debts owed to Defendant constitutes nonperformance by Defendant, Plaintiffs provide no evidence they sought to cure. In ruling on an earlier motion, the Court found Plaintiffs had, as of June 2010, not made a payment on any of the notes for eighteen months (Court File No. 16, p. 2). Since that time, Plaintiffs have not come forward with any additional evidence establishing they have tried to cure by repaying, or that they have made any other payments on the notes. Finally, even if Plaintiffs could establish nonperformance by Defendant, they are barred under Tennessee law from claiming damages because of their own material breach of contract. *Madden Phillips Constr.*, 315 S.W.3d at 812.

### IV. CONCLUSION

For the reasons discussed above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 27), and will likewise **DENY** Plaintiffs' motion seeking denial or postponement of Defendant's motion for summary judgment (Court File No. 30). The Court also will **DENY AS MOOT** Plaintiffs' motion to appoint a special master (Court File No. 38), **DENY AS MOOT** Plaintiff's second motion for a preliminary injunction (Court File No. 47), and **DENY AS MOOT** Defendant's motion to quash notice of deposition and subpoena *duces tecum* (Court File No. 63).

An Order shall enter.

18

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

19